UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| NATIONAL FUNDING, INC., ) | |
| ) | |
|     Plaintiff/Counter-Defendant ) | |
| ) | Civil Action No.: 5:20-cv-058 |
| v. ) | |
| ) | By:    Michael F. Urbanski |
| MODERN RENOVATIONS, LLC, ) | Chief United States District Judge |
| SHAWN LEE WOLFORD, ) | |
| ) | |
|     Defendants/Counter-Plaintiffs ) | |
| ) | |
| and ) | |
| ) | |
| MATTHEW SHANE WESTCOTT, ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff National Funding, Inc. ("National Funding") has filed a renewed motion for summary judgment as to its claim against defendants Modern Renovations, LLC ("Modern Renovations") and Shawn Lee Wolford ("Wolford"), and as to defendants' counterclaims. ECF No. 131. National Funding claims that Modern Renovations has failed to repay a $150,000 loan, and that Wolford breached his obligation as guarantor. Modern Renovations denies agreeing to the National Funding loan, asserting that the loan was fraudulently procured by its former branch manager, defendant Matthew Shane Westcott ("Westcott"), without authority or ratification. ECF No. 134.

National Funding seeks summary judgment, asserting that there is no genuine issue of material fact that Modern Renovations ratified the loan procured by Westcott or that it is liable to repay the loan proceeds on the legal doctrine of money had and received. The court

1

concludes that genuine issues of material fact exist on the issue of ratification, precluding summary judgment. As to National Funding's claim for money had and received, the court concludes that this issue requires jury resolution as well. Because National Funding's claim against Modern Renovations and Wolford for breach of the loan agreement and return of the loan proceeds requires jury resolution, National Funding's motion for summary judgment is **DENIED**.

However, the court will **GRANT** National Funding's motion for summary judgment as to the counterclaims for negligence and unjust enrichment lodged by Modern Renovations and Wolford, as these counterclaims lack legal foundation.

**I.**

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the

specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (quoting Tolan v. Cotton, 572 U.S. 650, 651 (2014), and Anderson, 477 U.S. at 255). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the Court must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

## II.

National Funding claims that Modern Renovations is liable as borrower, and its principal Wolford is liable as guarantor, of a February 24, 2020, Business Loan Agreement in the amount of $150,000. There is no dispute that the Business Loan Agreement was executed in Modern Renovations' name and guaranteed in Wolford's name. Nor is there any dispute that Westcott electronically signed the loan documents using Modern Renovations' and Wolford's names. Westcott claims that he had the authority to enter into the loan and guaranty on Modern Renovations' and Wolford's behalf, which Modern Renovations and Wolford dispute. The issue of Westcott's authority to sign the loan and guaranty is the subject of a separate lawsuit currently pending in this court, <u>Modern Renovations, LLC v. Matthew Westcott</u>, No. 5:20cv44 (W.D. Va. filed July 20, 2020), and National Funding has agreed to be bound by the jury's determination in that case as to whether Westcott had that authority.

National Funding's motion for summary judgment is not predicated on the disputed issue of Westcott's authority. Rather, National Funding makes two alternative arguments that do not rely on any finding that Westcott acted with the authority of Modern Renovations and Wolford. First, National Funding argues that there is no genuine issue of material fact that, even if it is determined that Westcott lacked authority, Modern Renovations and Wolford ratified the loan by accepting the loan proceeds and making loan payments to National Funding. Second, National Funding argues that as there is no dispute that Modern Renovations kept the loan proceeds, it is liable under the legal doctrine of money had and received. The undisputed facts associated with these claims are as follows.

On February 24, 2020, National Funding, as lender, entered into a Business Loan Agreement, #FWC391984A, electronically signed by Modern Renovations, as borrower, and Wolford, as guarantor. Bus. Loan Agreement, ECF No. 131-5. National Funding funded the loan by sending a deposit to Modern Renovations' United Bank Business Checking Account on February 25, 2020, in the amount of $145,704.57, the net proceeds of the $150,000 loan after deduction of an unsettled balance of $4,295.43 from a prior loan.[1] The Business Loan Agreement provided for daily payments from Modern Renovations' United Bank account to National Funding, and daily payments were made through March 31, 2020. The April 1, 2020, payment lacked sufficient funds, but payments were processed on April 2 and 3, 2020. No additional payments were made from the Modern Renovations United Bank account, and National Funding claims breach of the Business Loan Agreement as of April 8, 2020. National Funding claims that the balance due on April 8, 2020, was $168,894.48. The Business Loan Agreement specifies that it is governed by California law, and provides for the recovery of attorneys' fees and costs.

Modern Renovations and Wolford do not deny that $145,704.57 was deposited into Modern Renovations' United Bank account on February 25, 2020, but claim that they understood that the money had been deposited by Westcott to repay monies he had taken from the company. That same day, Wolford directed a payment of nearly all of that deposit, $145,700, towards the balance of Modern Renovations' American Express business credit card account.

---

[1] National Funding claims that it loaned Modern Renovations $150,000 under similar terms in 2019, as to which $4,295.43 remained unpaid as of February 24, 2020. While there is no dispute that the 2019 loan was funded and repaid, Modern Renovations and Wolford deny that they were aware that Westcott had taken out a loan from National Funding in 2019 until their falling out in the spring of 2020.

## A.

National Funding contends that Modern Renovations' daily payments on the loan until April 3, 2020, and Wolford's use of the loan funds to pay Modern Renovations' American Express bill demonstrate ratification of the Business Loan Agreement by Modern Renovations, entitling it to summary judgment on it claim of breach of the Business Loan Agreement. Wolford asserts that he was not aware of the National Funding loan at the time he paid American Express and thought that the money had come from Westcott. Likewise, Wolford asserts that he was not aware that daily automatic loan repayments were being made out of Modern Renovations' United Bank account to National Funding until early April, at which time he called National Funding and suspended all payments.

To prevail on a claim of ratification, the law requires that the ratifying party act with full knowledge of all material facts. "A principal is bound by his agent's previously unauthorized act if he ratifies the act by accepting its benefits with full knowledge of the relevant facts or, if upon learning of the act, he fails promptly to disavow it." Kilby v. Pickurel, 240 Va. 271, 271, 396 S.E.2d 666, 668 (1990) (citations omitted).[2] Here, however, Wolford asserts that he was not aware that Westcott had borrowed the money from National Funding until after he paid American Express and that he stopped the daily payments from the Modern Renovations United Bank checking account once he learned of the loan he believed to be

---

[2] Referencing the choice of law provision in the Business Loan Agreement, National Funding asserts that this issue is governed by California law. See Common Wealth Ins. Sys., v. Kersten, 40 Cal. App. 3d 1014, 1027 (Ct. App. 1974) (holding that a forged negotiable instrument may be ratified). Modern Renovations and Wolford assert that because Westcott lacked authority to sign the Business Loan Agreement, the choice of law provision is invalid and Virginia law applies. On the issue of ratification of a forged negotiable instrument, it does not appear that California and Virginia law differ to any meaningful extent. See Va. Code § 8.3A-403. Under either the law of California or Virginia, the disputed facts of this case preclude the court from granting summary judgment to National Funding on the issue of ratification as a matter of law.

fraudulently procured. For its part, National Funding argues that Wolford's lack of knowledge of the National Funding loan is both incredible and unreasonable as Modern Renovations' United Bank checking account plainly indicates the source of the monies deposited on February 25, 2020, as well as the daily payments made to National Funding over the next month. While there is no dispute that Modern Renovations has not repaid the loan procured by Westcott, its view is that it is as much a victim of Westcott's fraud as is National Funding and that National Funding's flawed loan verification procedures facilitated Westcott's fraud.

In this regard, it is important to remember that National Funding's claim is that Wolford and Modern Renovations, by their conduct, ratified the Business Loan Agreement. And there is more to the Business Loan Agreement than just return of the loan proceeds. Indeed, under its ratification theory, National Funding seeks the benefits of its bargain under the Business Loan Agreement, including the difference between the Funded Amount, $150,000, and the Total Payback Amount, $199,499.52, less payment received of $30,605.04, for an amount totaling $168,894.48. See National Funding Br. in Supp. of Renewed Mot. for Summ. J., ECF No. 131-1, at 10; Otero Aff., ECF No. 131-2, at ¶ 18. In addition, National Funding seeks payment of attorneys' fees under the Business Loan Agreement of $56,298.16, plus costs. See National Funding Brief in Supp. of Renewed Mot. for Summary J., ECF No. 131-1, at 11.

Because the remedy National Funding seeks under its ratification claim is enforcement of the Business Loan Agreement, with its attendant profit reflected in the Total Payoff Amount, plus attorneys' fees and costs, Modern Renovations' mere retention of the loan proceeds, without more, is insufficient as a matter of law to establish that Modern Renovations

7

ratified the Business Loan Agreement. While a reasonable jury could conclude that the facts support ratification, given the disputed facts, the court cannot conclude as a matter of law that Wolford and Modern Renovations ratified the Business Loan Agreement, and the summary judgment motion as to this issue is **DENIED**.

### B.

This conclusion leads directly into a discussion of the second claim on which National Funding seeks summary judgment, which is a claim for money had and received.[3] Under this claim, unlike its ratification claim, National Funding seeks return of the net loan proceeds paid to Modern Renovations, without its profit margin or attorneys' fees.

"An action for unjust enrichment is the modern version of the common law action of assumpsit for money had and received. The action lies whenever one person has in his hands money which equitably belongs to another." Liebau v. Seven Oaks Ltd. P'ship, No. 118066, 1991 WL 834960, *1 (Va. Cir. May 9, 1991) (citing John C. Holland Ent. v. J.P. Mascaro & Sons, 653 F. Supp. 1242, 1246 (E.D. Va. 1987), and City of Norfolk v. Norfolk County, 120 Va. 356, 91 S.E. 2d 820 (1917)).

In City of Norfolk, the Virginia Supreme Court traced the origin and history of the assumpsit cause of action from the common law of England. That case concerned whether the City of Norfolk could recover from Norfolk County real estate taxes erroneously paid to

---

[3] Unlike the breach of contract claim, whether by ratification or otherwise, with its California choice of law provision, there is no basis to apply California law to National Funding's quasi-contract claim for money had and received. Accordingly, in this diversity jurisdiction case, the court will apply Virginia law. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78–79 (1938); Hanna v. Plumer, 380 U.S. 460, 471 (1965). In any event, California law on unjust enrichment mirrors that of Virginia. See Avidor v. Sutter's Place, Inc., 212 Cal. App. 4th 1439, 1454 (Ct. App. 2013); Haskins v. Symantec Corp., No. 13-cv-01834, 2014 WL 2450996, *4 (N.D. Cal. June 2, 2014).

the county for property located in the city following annexation. Before addressing the historical roots of the doctrine, the Supreme Court of Virginia noted:

> Speaking generally, there are three classes of cases in which the action of assumpsit properly lies for the recovery of money, namely:
> (1) Where there is an express contract in fact and privity in fact between the parties plaintiff and defendant.
> (2) Where there is an implied contract in fact and privity in fact between the parties plaintiff and defendant.
> (3) Where there is an implied contract in law and no privity in fact, but an implied privity in law, between the plaintiff and defendant.
> The case before us falls with the class last named, which is characterized as quasi ex contractu, the obligation upon which rests being so designated under the civil law, from which the principle of such obligation was derived.

120 Va. at 360–61, 91 S.E.2d at 821. After its exhaustive discussion of the common law origins of assumpsit, the court reversed the grant of demurrer by the Circuit Court of the County of Norfolk, finding that the city could maintain an assumpsit claim against the county for the erroneously paid real estate taxes.[4]

"Unjust enrichment 'is an implied contract action based upon the principle' that one may not 'enrich himself unjustly at the expense of another.'" LCF Group, Inc. v. Piedmont Power Sports, Inc., No. 3:22cv0057, 2023 WL 5352001, at *5 (W.D. Va. Aug. 21, 2023) (quoting CGI Fed. Inc. v. FCi Fed., Inc., 295 Va. 506, 519, 814 S.E.2d 183, 190 (2018)). The Supreme Court of Virginia has adopted a three-part test to govern unjust enrichment claims: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit

---

[4] As such, Modern Renovations' argument that a claim for unjust enrichment requires privity contravenes established Virginia law. See Borg v. Warren, 545 F. Supp. 3d 291, 328 (E.D. Va. 2021) ("[T]he plaintiff need not directly confer the benefit upon the defendant—instead, the plaintiff may merely show that the defendant owned, operated and derived their income from a company that received payment from the plaintiffs.").

and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." James G. Davis Constr. Corp., v. FTJ, Inc., 298 Va. 582, 597, 841 S.E.2d 642, 650 (2020) (citing Schmidt v. Household Fin. Corp., II, 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008)); T. Musgrove Corp. v. Young, 298 Va. 480, 486, 840 S.E.2d 337, 341 (2020);.

The action for unjust enrichment is grounded in equitable principles. In Lawson's Ex'r v. Lawson, 57 Va. (16 Gratt.) 230, 232 (1861), the court stated:

> The action of indebitatus assumpsit for money had and received will lie whenever one has the money of another which he has no right to retain, but which ex æquo et bono, he should payover to that other. This action has of late years been greatly extended, because founded upon principles of justice; and it now embraces all cases in which the plaintiff has equity and conscience on his side, and the defendant is bound by ties of natural justice and equity to refund the money.

See also Robertson v. Robertson, 137 Va. 378, 381, 119 S.E. 140, 140 (1923) ("Here we have a transaction in which a valuable consideration has passed from the plaintiff to the defendant under a mutual mistake of fact, which, because such consideration therefor has failed, the defendant in equity and good conscience has no right to retain."); Cary v. Curtis, 44 U.S. 236, 246–47 (1845) ("The action of assumpsit for money had and received it is said by Ld. Mansfield, [2] Burr[ow 1005,] 1012 [(1760)], Moses v. Macfarlen, will lie in general whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by the ties of natural justice and equity to refund."). Because of its equitable foundation, courts have read into the third element the requirement that the defendant's acceptance or retention of the benefit be under "circumstances that render it inequitable for the defendant to retain the benefit without paying for value." LCF Group, 2023

10

WL 5352001, at *6; Nossen v. Hoy, 750 F.Supp. 740, 744–45 (E.D. Va. 1990) ("The quasi-contract is a plaintiff's remedy at law when the facts establish that a defendant has been unjustly enriched at the expense of the plaintiff, but where the facts fail to establish that the parties established any form of agreement."); Microstrategy, Inc. v. Netsolve, Inc., 368 F. Supp. 2d 533, 537 (E.D. Va 2005); In re Bay Vista of Va., Inc., No. 2:09cv46, 2009 WL 2900040, at *5 (E.D. Va. June 2, 2009); Integrated Direct Marketing, LLC, v. May, 129 F. Supp. 3d 336, 374 (E.D. Va. 2015); Gibbs v. Haynes Invs., LLC, 368 F. Supp. 3d 901, 933 (E.D. Va. 2019); 26 Williston on Contracts § 68:5 n.3 (4th ed.).

The first element of unjust enrichment is met here, as Modern Renovations kept the money National Funding deposited in Modern Renovations' United Bank account and used it to pay its American Express bill.

As to the second element, while Wolford claims that he did not know that the money he paid American Express had come from National Funding on February 25, 2020, when he paid Modern Renovations' American Express bill, he readily acknowledges that he learned by early April that the monies were National Funding loan proceeds obtained by Westcott. In LCF Group, this court recently concluded that an unjust enrichment claim does not require that the "recipient was aware who had conferred the benefit at the time it was received. For these reasons, [Modern Renovations] not knowing that it should reasonably have expected to repay [National Funding] at the time it received the benefit is not fatal to [National Funding's] unjust enrichment claim." 2023 WL 5352001, at *5. In this case, by early April 2020, Wolford was aware that the monies he used to pay American Express were proceeds from the National

11

Funding loan Westcott had procured. As such, it is clear that the second element of an unjust enrichment claim is met in this case.

But just as in LCF Group, a jury question exists as to the third element, which, flexibly applying equitable principles, requires the plaintiff on an unjust enrichment claim to establish "acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for value." Id. at *6. Both National Funding and Modern Renovations claim to be innocent victims of Westcott's alleged fraud. National Funding paid the loan proceeds to the Modern Renovations United Bank account and has not been repaid under the Business Loan Agreement. For his part, Wolford feels victimized by Westcott's alleged fraud, of which the National Funding February 24, 2020, loan is only a small part.

As the court concluded in LCF Group, "[a] jury, not the Court, will need to weigh the evidence and draw inferences regarding whether the benefit was accepted or retained under circumstances making it inequitable for [Modern Renovations and Wolford] to retain the benefit without payment for its value." Id.

> Thus, in evaluating whether circumstances make it inequitable for [Modern Renovations and Wolford] to have retained [National Funding's] benefit, a jury will also need to consider the principle that "[w]here one of two innocent parties must suffer by a fraud perpetrated by another, the law imposes the loss upon the party who, by his misplaced confidence, has enabled the fraud to be committed." Sager v. W.T. Raleigh Co., 153 Va. 514, [529], 150 S.E. 244, 248 (1929). Or, in other terms, the party "who has put it within the power of the third person to commit the wrong must suffer the loss." Rayder v. Ahtna Gov't Srvs. Corp., No. 1:05-cv-1251, 2006 WL 3000457, at *4 (E.D. Va. Oct. 19, 2006).

Id.; see Bank of Pittsburgh v. Neal, 63 U.S. 96, 111 (1859) ("[W]here one of two innocent parties must suffer, through the fraud or negligence of a third party, the loss shall fall upon him who gave the credit."); Sherwood Distilling Co. v. Peoples First Nat'l Bank & Trust Co., 193 F.2d 649, 653 (4th Cir. 1952) ("[W]here one of two innocent persons must suffer from the wrongful act of a third, he who has enabled such third person to occasion the loss must sustain it . . . ."); Citizens Sav. Bank, F.S.B. v. Verex Assurance, Inc., 883 F.2d 299, 302 (4th Cir. 1989) ("Where one of two innocent persons will suffer for the wrongful act of a third, the one who was most at fault in letting it be brought about will be required to bear the loss." (cleaned up)); Midfirst Bank, SSB v. C.W. Haynes & Co., 893 F. Supp. 1304, 1318 (D.S.C. 1994), aff'd, 87 F.3d 1308 (4th Cir. 1996) ("[W]here one of two innocent parties must bear a loss occasioned by the fraud of a third party, the loss should fall upon the party whose active conduct or passive negligence enabled the third party to commit the fraud.").

Because a jury should decide whether the February 24, 2020, loan proceeds equitably should be refunded to National Funding by Modern Renovations, the motion for summary judgment filed by National Funding on its claim of unjust enrichment is **DENIED**.

### III.

National Funding also seeks summary judgment on the two counterclaims filed by Modern Renovations and Wolford. In their first claim, Modern Renovations and Wolford allege negligence against National Funding in approving the February 24, 2020, loan. Their second claim is for unjust enrichment, principally for the interest and fees earned by National Funding on the earlier completed loan to Modern Renovations, which is likewise claimed to have been fraudulently procured by Westcott. Neither of these claims are legally viable.

13

First, a negligence claim must be founded on the breach of a legal duty, which is absent here. In Willner v. Dimon, 849 F.3d 93, 113 (4th Cir. 2017), the Fourth Circuit affirmed dismissal of a negligent loan modification claim against JP Morgan Chase Bank. In the absence of a common law duty on the part of the bank to act reasonably in processing a loan modification application, the court concluded that the facts alleged "can't give rise to a tort claim in Virginia." Id. The court explained:

> Under Virginia law, "[t]he elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff." Blue Ridge Serv. Corp. of Virginia v. Saxon Shoes, Inc., 271 Va. 206, [218,] 624 S.E.2d 55, 62 (2006). However, "[a] tort action cannot be based solely on a negligent breach of contract." Richmond Metro. Auth. V. McDevitt St. Bovis, Inc., 256 Va. 553, [558], 507 S.E.2d 344, 347 (1998).

"This follows from the bedrock principle of Virginia common law that tort actions protect the safety of persons and property, while contract law governs bargained-for expectations." Ironworks Dev. LLC v. Truist Bank, 574 F. Supp. 3d 376, 381 (W.D. Va. 2021) (citing Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988)). In Ironworks, the court dismissed a negligence claim against Truist Bank for negligently processing a Paycheck Protection Program loan application. Id. Likewise, in Sherman v. Litton Loan Servicing, L.P., 796 F. Supp. 2d 753, 764 (E.D. Va. 2011), the court dismissed a negligence claim against a loan servicing firm for negligently processing a loan modification application, stating "plaintiff has failed to allege a duty that is actionable in tort. Instead, plaintiff has merely re-cast his breach of contract claim, which itself is without merit, as a negligence action sounding in tort." Similarly, in Pierce v. Wells Fargo Bank, No. CL11-

14

1373, 85 Va. Cir. 32, 2012 WL 9735354, at *4 (Jan. 6, 2012), another case alleging negligence against a bank in processing a loan modification application, the court concluded that "[p]laintiffs make no allegations of fact sufficient to support a common law duty and therefore, the portion of Wells Fargo and Samuel I. White's Demurrer regarding negligence is sustained."

Modern Renovations has identified no common law duty owed by National Funding from which a negligence claim may arise. Absent such a legal duty, there is no basis for a claim of negligence against National Funding in processing the February 24, 2020, loan application submitted by Westcott. Accordingly, the court **GRANTS** summary judgment for National Funding as to the negligence counterclaim filed by Modern Renovations and Wolford.

Second, National Funding has not been unjustly enriched by funding and completing the prior loan with Modern Renovations. While Modern Renovations and Wolford assert that the completed prior loan was fraudulently procured by Westcott, Modern Renovations obtained the financing and repaid the loan in full. Moreover, Modern Renovations claimed the interest payments made to National Funding for the loan on its federal tax return. Under these circumstances, there can be no claim of unjust enrichment. "The existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." CGI Fed. Inc. v. FCi Fed., Inc., 295 Va. 506, 519, 814 S.E.2d 183, 190 (2018); S. Biscuit Co. v. Lloyd, 174 Va 299, 311, 6 S.E.2d 601, 606 (1940) ("[A]n express contract defining the rights of the parties necessarily precludes the existence of an implied contract of a different nature containing the same subject matter.").

## IV.

Genuine issues of material fact preclude entry of summary judgment on National Funding's claim of breach of the Business Loan Agreement under a ratification theory, and a jury should decide whether Modern Renovations should return the loan proceeds on an unjust enrichment claim. As such, the court will **DENY** National Funding's motion for summary judgment as to its breach of contract and unjust enrichment claims.

Modern Renovations and Wolford have no actionable negligence or unjust enrichment claim against National Funding, and the court will **GRANT** National Funding's motion for summary judgment as to Modern Renovations' and Wolford's counterclaims.

Accordingly, National Funding's Renewed Motion for Summary Judgment, ECF No. 131, is **DENIED** as to its claims against Modern Renovations and Wolford, and **GRANTED** as to Modern Renovations' and Wolford's counterclaims.

An appropriate order will be entered.

Entered: January 24, 2024

Michael F. Urbanski
Chief U.S. District Judge
2024.01.24 13:02:28
-05'00'

Michael F. Urbanski
Chief United States District Judge